UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| RODNEY RICHARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:17-cv-00517-JPH-MJD |
| ) | |
| CINDY YORK RN, ) | |
| DR. KUENZLI MD, ) | |
| ) | |
| Defendants. ) | |

**ENTRY GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

For the reasons explained in this Entry, the defendants' motion for summary judgment, dkt. 70, is **granted in part and denied in part.**

### I. Background

Rodney Richard is a prisoner who brings this 42 U.S.C. § 1983 civil rights action against Cynthia York, RN, and Dr. Carl Kuenzli. Mr. Richard alleges that they were deliberately indifferent to his health and safety when he was an inmate at the Wabash Valley Correctional Facility (Wabash Valley).

Both defendants have moved for summary judgment. Dkt. 70. Mr. Richard responded to the motion for summary judgment, dkts. 86, 87, 88, the defendants replied, dkt. 96, and Mr. Richard filed a surreply, dkt. 97. The motion for summary judgment is ripe for resolution.

### II. Summary Judgment Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts are those that might affect the outcome of the suit under applicable

1

substantive law." *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015) (internal quotation omitted). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The Court views the facts in the light most favorable to the non-moving party and all reasonable inferences are drawn in the non-movant's favor. *Barbera v. Pearson Education, Inc.,* 906 F.3d 621, 628 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Johnson v. Advocate Health and Hospitals Corp.*, 892 F.3d 887, 893 (7th Cir. 2018).

### III. Discussion

#### A. Undisputed Facts

On the basis of the pleadings and the expanded record, and specifically on the portions of that record that comply with the requirements of Rule 56(c)(1), the following facts are undisputed for purposes of the motion for summary judgment.

Cynthia York is a nurse licensed to practice in the State of Indiana. During all times relevant to the complaint, she was employed as a nurse by Wexford of Indiana, LLC at Wabash Valley. Dkt. 96-1 at ¶¶ 2-3.[1] Nurse York did not have authority to diagnose patients or order specific treatment. *Id.* at ¶ 12. In situations when she was not able to address a patient's needs, she had the authority to request that a patient be seen by a physician, or if needed, make a phone call to speak with an on-call physician at any time. *Id.*

---

[1] As pointed out by the plaintiff, although Nurse York's affidavit was referenced in the defendants' brief in support, it was not filed with that brief. Rather it was filed with the reply brief at dkt. 96-1. The plaintiff's surreply was allowed on this basis. Dkt. 97.

Carl Kuenzli is a physician licensed to practice in the State of Indiana. He is currently employed as a physician in Bunker Hill, Indiana. Dkt. 72-1 at ¶¶ 2-3. During June and July 2017, Dr. Kuenzli was employed by Wexford of Indiana, LLC as the Regional Medical Director in the State of Indiana. As part of his duties and obligations as the Regional Medical Director, he would at times serve as an on-call physician for different facilities, including Wabash Valley. *Id*. at ¶ 4.

**The onset of Mr. Richard's abdominal pain on June 29**

Mr. Richard's abdominal pain began while he was working in his prison job as a porter in the health care unit infirmary on Thursday June 29, 2017. Dkt. 72-2 at 20-22. He felt a sharp pain in his whole abdominal area. *Id.* at 21. Mr. Richard was told by a non-party nurse that he should go back to his cell house and rest. He estimates he left work and went to the cell house around 6:15 p.m. *Id.* at 23-24.

**Mr. Richard's abdominal pain continues on June 30**

The next morning, June 30, 2017, Mr. Richard reported to work at 11:00 a.m. but was still experiencing stomach pain. *Id.* at 25. He worked from about 11:00 a.m. to around 6:15 p.m., when he left the health care unit. He normally would go to recreation at that time, but he returned to his cell. He felt like he had been kicked in the stomach and went down to his knees in his cell. *Id.* at 25. He crawled out of his cell on the floor and an officer returned him to the health care unit in a wheelchair. *Id.* at 26.

**Nurse York sees Mr. Richard for the first time**

Following his return to the health care unit in the late evening on June 30, 2017, Mr. Richard told Nurse York that his abdomen was hurting. When she asked where it hurt, Mr. Richard told her "all over in the middle of my abdomen." *Id.* at 27. He told her that the pain was worse than the day before. *Id.* The medical records reflect that Mr. Richard described the pain as cramping,

3

and in the lower left quadrant. Dkt. 72-3 at 5; dkt. 96-1 at ¶¶ 6, 10. He complained of being dehydrated and having difficulty eating and drinking the past two days. Dkt. 72-3 at 5; dkt. 96-1 at ¶ 6.

**Nurse York calls Dr. Kuenzli**

Nurse York called Dr. Kuenzli and informed him that Mr. Richard had left lower quadrant abdominal pain and appeared to be dehydrated due to difficulty eating and drinking over the last two days. Dkt. 96-1 at ¶ 6. Dr. Kuenzli ordered that Mr. Richard receive a bag of IV fluids. *Id.* After the fluids were administered, Dr. Kuenzli called back and Nurse York told him that Mr. Richard no longer appeared dehydrated but was still complaining of left lower quadrant abdominal pain. Dkt. 72-1 at ¶ 5; dkt. 96-1 at ¶ 6.

Dr. Kuenzli instructed that Mr. Richard should be seen the next day during sick call; directed follow-up with Dr. Byrd when he returned to the prison on the following Monday; prescribed Tylenol; and told Nurse York to tell Mr. Richard to return to the infirmary if his pain became any worse. Dkt. 96-1 at ¶ 6; dkt. 72-3 at 6.

Nurse York followed Dr. Kuenzeli's directions and told Mr. Richard to return to the infirmary if the pain worsened. *Id.* Mr. Richard was taken back to his cell house in a wheelchair after the IV ran out. Dkt. 72-2 at 28.

**Mr. Richard continues to experience pain on July 1 and 2**

The following day, July 1, 2017, Mr. Richard returned to the infirmary early in the morning before his work shift started, but because his stomach was still hurting, a nurse told him to go back to his cell house to rest. Dkt. 72-2 at 30-31.

Later that evening, Mr. Richard went back to the infirmary but couldn't work because of the pain. *Id.* at 31-32. When Nurse York came on duty at 6:00 p.m., he told her his stomach was

4

still hurting. *Id.* at 31-33. Nurse York and another nurse told him to return to his cell house and rest. *Id.*

The next day, on July 2, Mr. Richard returned to the infirmary between 6:30 and 7:00 a.m. *Id.* at 34. He was able to walk to the infirmary with some help from a friend. *Id.* at 34-35. He told another non-party nurse that his stomach was hurting "real bad" but he was told to return to his cell because it was too early to call the doctor. *Id.* at 35-36. An inmate porter was sent to get Mr. Richard and bring him back to the infirmary in a wheelchair at around 11:00 a.m. *Id.* at 36. Mr. Richard told infirmary staff his abdomen was hurting and then he began throwing up "green stuff." *Id.* at 37.

**Dr. Kuenzli orders Mr. Richard sent to the emergency room**

Shortly thereafter, infirmary staff called Dr. Kuenzli and told him that Mr. Richard's symptoms were severe: He had pain in his lower right quadrant, he was vomiting, and he had dark circles around his eyes and dry mucus membranes. Dkt. 72-1 at ¶ 7; dkt. 72-3 at 3. Dr. Kuenzli instructed staff to transport Mr. Richard to the hospital emergency room for an immediate evaluation. *Id.* The hospital ran tests, conducted a CAT scan, and then emergency surgery was performed to remove an abscess and Mr. Richard's appendix because it had ruptured. Dkt. 72-1 at ¶ 8; dkt. 72-2 at 37.

**B. Discussion**

Mr. Richard alleges that Nurse York was deliberately indifferent to his serious medical needs when "she did what the doctor told her to do". Dkt. 72-2 at 17-18. According to Mr. Richard, Nurse York did not follow proper medical procedures and should have known that Mr. Richard had a more serious medical condition when she saw him on June 30 and July 1, 2017. *Id.*

Mr. Richard alleges that Dr. Kuenzli was deliberately indifferent to his serious medical

5

needs when he told Nurse York to give Mr. Richard an IV and a box of Tylenol and send him back to his cell on June 30, 2017. Dkt. 72-2 at 20. Mr. Richard believes that Dr. Kuenzli should have recognized the severity of his symptoms and sent him to an outside hospital sooner.

### A. The Eighth Amendment Deliberate Indifference Standard

Mr. Richard was a convicted inmate when the relevant incidents occurred. "[D]eliberate indifference to a prisoner's serious medical need violates the Eighth Amendment's protection against cruel and unusual punishment." *Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). To prevail on an Eighth Amendment deliberate indifference medical claim, a plaintiff must show: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed, but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Knight v. Grossman,* 942 F.3d 336, 340 (7th Cir. 2019). The defendants do not dispute that Mr. Richard had a serious medical condition so only the second element is at issue.

"The inquiry is subjective and requires that the official know facts from which he could infer that a substantial risk of serious harm exists, and he must actually draw the inference." *Knight*, 942 F.3d at 340 (internal quotation omitted). "[E]vidence of medical negligence is not enough to prove deliberate indifference." *Id.* (internal quotation omitted). In addition, "mere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation." *Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017) (internal quotation omitted).

"To determine if a prison official acted with deliberate indifference, we look into his or her subjective state of mind." *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). "For a prison official's acts or omissions to constitute deliberate indifference, a plaintiff does not need to show that the official intended harm or believed that harm would occur." *Id.* But a plaintiff is required

6

to "provide evidence that an official *actually* knew of and disregarded a substantial risk of harm." *Id.* (emphasis in original). "Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety." *Id.* "A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury *or unnecessarily prolonged his pain*, and even brief, unexplained delays in treatment may constitute deliberate indifference." *Lewis v. McLean,* 864 F.3d 556, 563 (7th Cir. 2017) (emphasis in original) (internal quotations omitted).

### B. Disputed Material Facts Preclude Summary Judgment for Nurse York

Mr. Richard disputes what Nurse York claims she knew about his condition. Nurse York testified that she did not believe Mr. Richard was suffering from symptoms consistent with a burst appendix or appendicitis when she saw him on June 30; that Mr. Richard complained of abdominal pain in his lower left quadrant with pain at a level 5 on a scale of 1-10; and that she communicated the symptoms that Mr. Richard reported to her to Dr. Kuenzli. Dkt. 96-1 at ¶¶ 10-11. Mr. Richard agrees that he told Nurse York he could not eat or drink for two days, dkt. 72-2 at 53, but he denies having:

- described the location of his pain as in his left lower quadrant, as was indicated in the medical records and in Nurse York's affidavit. Dkt. 86 at 5; dkt. 87 at ¶ 6;
- described his pain as "cramping." Dkt. 86 at 13;
- rated his pain as a 5 on a scale of 1-10. Dkt. 97 at ¶ 2;
- said that he believed he might have food poisoning.[2] Dkt. 86 at 5; dkt. 97 at ¶ 1.

---

[2] Nurse York contends that she thought Mr. Richard had food poisoning and her treatment was consistent with that belief. Dkt. 96 at 2-3. But the medical records do not support this contention. Nurse York Dkt. 72-3 at 5 (Nurse York's notes in the chart reflecting that she told Mr. Richard he would have had diarrhea if he had food poisoning).

7

Mr. Richard further testified that on June 30, 2017, he told Nurse York that he had severe pain in the middle of his abdomen. Dkt. 72-2 at 27.

Dr. Kuenzli told Nurse York that Mr. Richard should be seen the next day during sick call if his symptoms did not subside or became worse. Dkt. 72-3 at 6; dkt. 96-1 at ¶ 6. Mr. Richard returned to the infirmary on the morning of July 1 but was told to return to his cell. Dkt. 72-2 at 31. He returned to the infirmary in the evening because he was still in a great deal of pain, but Nurse York and another nurse told him to go back to his cell. Dkt. 72-2 at 30-33. There is no evidence that Nurse York contacted a physician or took any other action in response to Mr. Richard's complaints of pain on July 1, 2017.

The evidence that goes to Nurse York's knowledge and subjective state of mind is disputed, in part. Construing the evidence in the light most favorable to Mr. Richard as the Court must, a jury could conclude that Nurse York was deliberately indifferent to Mr. Richard's serious medical condition. A jury could believe Mr. Richard's testimony that he told Nurse York he had pain in the middle of his abdomen (not the left quadrant), that the pain was worse than the day before, and that Nurse York did not accurately convey this information to Dr. Keunzli. A jury could also find that Nurse York was deliberately indifferent when she sent Mr. Richard back to his cell on July 1 and took no other action in response to his persistent complaints of worsening pain.

Nurse York's contention that she did not think Mr. Richard had appendicitis or a burst appendix misses the point. Nurse York knew that Mr. Richard had been experiencing persistent abdominal pain since June 29, that the treatment prescribed by Dr. Keunzli on June 30 had not alleviated the pain, and that Dr. Keunzli had told her to let him know if the pain persisted. When Nurse York saw Mr. Richards in the infirmary on July 1, he complained of severe abdominal pain. With knowledge of these facts, she sent Mr. Richards back to his cell rather than calling the doctor

8

or taking other action. This could constitute reckless disregard regardless of whether Nurse York thought Mr. Richard's symptoms did not indicate appendicitis. *See Rivera v. Kettle Moraine Correctional Institution,* 2016 WL 2766642 at *4, No. 14-C-6 (E.D. Wis. May 12, 2016) ("It is not necessary that [the nurse] was subjectively aware of Plaintiff's appendicitis, just that she knew of a substantial risk of harm to the inmate and disregarded the risk.") (internal quotation omitted). Nurse York was not authorized to diagnose Mr. Richard, but knew he was experiencing persistent, worsening pain and took no action.

Alternatively, a jury could reject Mr. Richard's testimony and find that he told Nurse York on June 30 that his pain was at a level 5 and was in the lower left quadrant. A reasonable jury could find that Nurse York properly conveyed accurate information to the physician and then carried out the physician's orders. While a reasonable jury could find that Nurse York did not disregard a substantial risk of serious harm on June 30, 2017, *Sherrod v. Lingle,* 223 F.3d 605, 611 (7th Cir. 2000), questions of material facts and witness credibility determination must be made. These are tasks for a jury at trial, not the Court on a motion for summary judgment. *Id*; *Johnson*, 892 F.3d at 893.

For these reasons, the motion for summary judgment must be **denied** as to the claim against Nurse York.

### D. Dr. Kuenzli is Entitled to Summary Judgment

Dr. Kuenzli's situation is quite different from that of Nurse York. Unlike Nurse York, Dr. Kuenzli did not interact with Mr. Richard or examine him. And there is no dispute as to what Dr. Kuenzli knew. Dr. Kuenzli was consulted on the phone twice. The first time, June 30, Dr. Kuenzli was told that Mr. Richard complained of abdominal pain in the lower left quadrant, he appeared to be dehydrated, he had difficulty eating and drinking over the past two days, and was rating his

9

pain as a 5. Mr. Richard has not designated any evidence from which a finder of fact could conclude that Dr. Kuenzli was told or knew anything more, such as a higher pain level or a different location of the pain. To the contrary, Mr. Richard admitted he does not know what Nurse York conveyed to Dr. Kuenzli on June 30, 2017. Dkt. 72-2 at 59-60. Therefore, he cannot dispute defendants' assertion that the extent of Dr. Kuenzli's knowledge was what Nurse York told him.

In response to the information from Nurse York, Dr. Kuenzli prescribed an IV and Tylenol; instructed that Mr. Richard should be seen the next day during sick call; directed follow-up with Dr. Byrd when he returned to the prison on the following Monday; and told Nurse York to tell Mr. Richard to return to the infirmary if his pain became any worse. Dkt. 96-1 at ¶ 6; dkt. 72-3 at 6.

Dr. Kuenzli was not aware of Mr. Richard experiencing symptoms that indicated appendicitis or a burst appendix. Dkt. 72-1 at ¶ 6. The pain as described to him was in the lower left quadrant, while appendicitis is most often described as sharp, stabbing pain around the navel and moving to the lower right quadrant. *Id.* Further, Mr. Richard had no emesis (vomiting), and given the reported symptoms and medical history, it did not appear likely that his symptoms were a burst appendix. *Id.*

Dr. Kuenzli was not contacted on July 1, 2017, when Mr. Richard returned to sick call.

The second time Dr. Kuenzli was contacted regarding Mr. Richard was July 2 when he was told that Mr. Richard's symptoms were severe. In response, Dr. Kuenzli ordered that he be sent to the emergency room. The information that was presented to Dr. Kuenzli regarding Mr. Richard's symptoms on July 2, 2017, was consistent with an urgent medical condition. *Id.* at ¶ 11.

Based on the information that was provided to Dr. Kuenzli on June 30, 2017, no reasonable jury could find that he was deliberately indifferent to a serious medical need presented by Mr.

Richard. Therefore, the motion for summary judgment is **granted** as to the claim against Dr. Kuenzli.

### IV. Conclusion

The motion for summary judgment, dkt. [70], is **granted** as to the claim against Dr. Kuenzli and **denied** as to the claim against Nurse Cynthia York.

The plaintiff's motions for status of case, dkt. [98] and [99], are **granted** to the extent that his surreply was considered by the Court.

The claim against Nurse York will be resolved either through settlement or trial. The parties shall have **through June 1, 2020,** in which to **renew their statements** regarding whether setting this matter for a settlement conference with the Magistrate Judge would be beneficial.

**SO ORDERED.**

Date: 5/6/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

RODNEY RICHARD
189790
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Douglass R. Bitner
KATZ KORIN CUNNINGHAM, P.C.
dbitner@kkclegal.com

Thel Matthew Frost
JOHNSON & BELL, LTD. (Crown Point)
frostm@jbltd.com